### MAINE AUTOMOBILE DEALERS ASSOCIATION

v.

### James TIERNEY.[1]

Supreme Judicial Court of Maine.

Argued Nov. 17, 1980.

Decided Feb. 3, 1981.

1. At the time of oral argument, Richard S. Cohen, Attorney General, was the named defendant. Since that time Mr. Cohen's term of office has expired and James Tierney has been elected Attorney General. Pursuant to M.R. Civ.P. 25(d)(1) we have made the appropriate change in the caption of this action.

Preti, Flaherty & Beliveau, Severin M. Beliveau (orally), Bruce C. Gerrity, Augusta, for plaintiff.

Cheryl Harrington, Asst. Atty. Gen., Consumer and Antitrust Div. (orally), Augusta, for defendant.

Before WERNICK, GODFREY, NICHOLS, GLASSMAN, ROBERTS and CARTER, JJ.

GLASSMAN, Justice.

This is a declaratory judgment action seeking an interpretation of 10 M.R.S.A. § 1174(4)(A), a section of the Regulation of Business Practices Between Motor Vehicle Manufacturers, Distributors and Dealers Act.[2] The case was reported to this Court

**2.** 10 M.R.S.A. § 1174(4)(A) provides:

4. Dealer violations. It shall be deemed a violation for a motor vehicle dealer:

A. To require a purchaser of a new motor vehicle, as a condition of sale and delivery thereof, to also purchase special features, appliances, equipment, parts or accessories not desired or requested by the purchaser; provided, however, that this prohibition shall not apply as to special features, appliances, equipment, parts or accessories which are already installed on the car when received by

by the Superior Court, Kennebec County, pursuant to M.R.Civ.P. 72(b). Because we conclude that the case as reported does not present a justiciable controversy, we discharge the report.

■ The plaintiff, Maine Automobile Dealers Association, is an incorporated trade association consisting of a large number of the state's new car dealers. The defendant is the Attorney General of the State who has, upon investigation, concluded that at least some of the Association's members have been conditioning sales by adding to new cars special features and accessories that are neither requested nor desired by purchasers. On July 16, 1980, the Attorney General began what he promises will be continuing enforcement action by filing in the Superior Court, Kennebec County, "assurances of discontinuance" executed by two car dealers. See 5 M.R.S.A. §§ 207 and 210.[3] On the same day, the Association reacted to what it alleges to be the Attorney General's overly restrictive interpretation of 10 M.R.S.A. § 1174(4)(A) by initiating an action for declaratory relief in the Superior Court, Kennebec County. Following the Attorney General's answer and upon the parties' joint motion, the Superior Court reported the case to the Law Court on an agreed statement of facts. M.R. Civ.P. 72(b). Although the agreed statement of facts was never signed by the parties or their counsel, it was stipulated at oral argument that the agreed statement contained in the record was a statement of the facts accepted and agreed to by both parties.

■ Rule 72(b) provides:

The court may, upon request of all parties appearing, report any action to the Law Court for determination where there is *agreement as to all material facts*, if it

is of the opinion that any question of law is involved of sufficient importance or doubt to justify the same. M.R.Civ.P. 72(b) (emphasis added).

The requirement of the rule that there be "agreement as to all material facts" is to assure that there is a sufficient factual record to permit the Law Court to decide the case and avoid ruling upon hypothetical questions. *E. g., Blackwell v. State*, Me., 311 A.2d 536, 537 (1973); *Johnson v. Maine Wetlands Control Board*, Me., 250 A.2d 825, 827 (1969). Our review of the agreed statement of facts presented in this case, as well as our analysis of the legal issues which the parties seek to have us decide, compels us to conclude that we do not have before us a sufficient record of the material facts to permit us to decide this case.

■ The Attorney General contends that Section 1174(4)(A) prohibits tying arrangements. A tying arrangement is one in which a seller conditions the sale of one commodity on the purchase of another commodity. *See, e. g., Times-Picayune Publishing Co. v. United States*, 345 U.S. 594, 605, 73 S.Ct. 872, 878, 97 L.Ed. 1277 (1953). The criteria for finding tying arrangements illegal under federal antitrust law are:

(1) the foreclosure of a substantial volume of commerce in the market for the tied product; or

(2)(a) the existence of economic power in the tying product, *and* (b) the foreclosure of a not insubstantial volume of commerce in the market for the tied product. 2 J. Von Kalinowski, *Antitrust Laws and Trade Regulation* § 14.03[3] (1979) (emphasis in original).

Assuming, for the sake of argument only, that the Attorney General is correct and that Section 1174(4)(A) does prohibit conduct analogous to tying arrangements prohibited under the federal antitrust laws, the

the dealer; provided further, that the motor vehicle dealer prior to the consummation of the purchase reveals to the purchaser the substance of this paragraph.

3. The "assurances of discontinuance" have been impounded, the effect of which is to keep secret the names of the two dealers who signed these agreements. We are unaware of any

statutory authority for such impoundment. Although under appropriate circumstances a court may impound records when publication would impede the administration of justice, *see, e. g.,* M.R.Crim.P. 6(e), the power of impoundment should be exercised with extreme care and only upon the clearest showing of necessity.

agreed statement of facts, set out in the margin,[4] is insufficient to permit us to determine whether in fact such prohibited tying arrangements exist.

The agreed statement does not explicitly state that consumers have been required to purchase "extras" they did not want. Nor does the agreed statement reveal whether the same models are available without "extras" from other dealers. Although the agreed statement asserts that some small fuel-efficient cars are in high demand, it does not state whether the practices described apply only to such small fuel-efficient cars or whether these practices apply to all new cars or whether they apply only to cars other than small fuel-efficient cars. The agreed statement asserts that businesses which sell extras are in direct competition with new car dealers; it does not, however, describe the impact upon such competing businesses of the practices which the Attorney General seeks to prohibit.

Finally, there is nothing in the agreed statement to show that the members of the Association dominate the market for automobiles in general, for small fuel-efficient automobiles or for a particular make of small fuel-efficient automobiles. No recognition is given to the diverse nature of the various parts of the state of Maine. What may be prohibited under the statute in an isolated part of the state of Maine in which one automobile dealer may by reason of his location dominate the market may not be prohibited in the more urban sections of the state in which numerous automobile dealers may be in direct competition with each other and may adjust their practices to meet that competition. In sum, we do not know what the actual practices are in the market nor the impact of such practices upon competitors or consumers.

The Attorney General insists that these are matters which need not concern the Court. In the view of the Attorney General, the literal language of the statute prohibits a dealer from selling an automobile which contains an "extra" which the pur-

**4.** The agreed statement of facts states:

1. Some new car dealers add extras to all unsold and unordered new vehicles upon arrival at their dealerships.
2. *Some other new car dealers add extras to some unsold new vehicles on arrival at their dealerships.*
3. These extras may include rustproofing, exterior paint polish, body side moulding, pin stripes, sunroofs, radios, mirrors, tires, and others.
4. (a) Dealer added rustproofing costs consumers between $150.00 and $189.00.
(b) Dealer added exterior paint polish costs consumers between $150.00 and $175.00.
(c) Dealer added body side moulding costs consumers between $42.00 and $59.00.
(d) Dealer added pin stripes cost consumers between $33.00 and $149.00.
(e) Dealer added sunroofs cost consumers between $250.00 and $900.00.
(f) Dealer added radios cost consumers between $130.00 and $222.00.
(g) Dealer added mirrors cost consumers between $15.00 and $65.00.
(h) Dealer added tires cost consumers between $125.00 and $175.00.
(i) Dealer added air conditioning.
5. Some dealers often add a "package" of extras to some unsold and unordered new vehicles upon arrival at their dealership[s] which "package" includes several different extras and which "package" costs consumers $250.00 to $750.00, and in some instances more.
6. Some dealers will not order certain makes or models of new cars without rustproofing and paint finish.
7. In some instances, consumers who wish to purchase a particular make or model new car without any extras must place an order and may wait eight (8) weeks or more.
8. Some small fuel efficient cars are in high demand at the present time.
9. The waiting period for small fuel efficient cars in high demand is longer than the waiting period for other models.
10. Consumers who cannot wait or do not want *to wait to order a new vehicle often will* buy a new car with dealer added extras [or a package] of extras, regardless of whether they want or need the extras.
11. The addition of extras or packages of extras to new cars increases the dealer[s'] profit on the sale of the new cars.
12. Many businesses other than new car dealers sell and install extras. For example, bodyshops and rustproofing businesses sell and install extras.
13. Businesses [that] sell extras are in direct competition with new car dealers who sell extras.
14. In some instances consumers have been told by sales personnel that the dealership[s] automatically add rustproofing to all new cars.

chaser would not have otherwise ordered unless the dealer is prepared to remove the "extra" or absorb the cost thereof.[5] This is so, according to the Attorney General, even though a nearby dealer may have available for sale to the purchaser an identical automobile without the undesired "extra." We decline to take such a simplistic view of complex economic regulation. Before concluding that this statute has or has not been violated, we must know more about whether there is or is not a restriction of competition or at the very least a substantial threat of restriction of competition. Moreover, the record must clearly reveal whether consumers are being required to purchase that which they would not otherwise purchase. We do not understand that the Legislature intended to proscribe uncoerced transactions between consenting adults when such transactions do not have an adverse impact upon competition.

For all of these reasons, we conclude that the requirement of Rule 72(b) that there be "agreement as to all material facts" has not been met. Therefore, we discharge the report and remand the case to the Superior Court. Upon remand, the parties should consider whether an adequate factual record to permit a judicial construction of this statute can be developed in the context of an action brought on behalf of the Association or whether such factual record can be developed only with relation to a particular dealer or dealers. We do not have sufficient familiarity with the economic realities of the new car retail market to express any views upon that question. We note the problem in order that the parties·with their knowledge of the market may determine whether they should attempt to develop a factual record within the context of this proceeding or whether this case should be dismissed and the factual record developed with regard to a particular dealer or dealers.

5. We are not certain what is meant by the term "extra." As we understand the argument of the Attorney General, if a dealer has two identical cars on his showroom floor, except that one has a dealer-ordered, factory-installed automatic transmission and the other has a standard transmission, the customer has a right to insist on purchasing the car with the automatic transmission and have the dealer absorb the cost of that "extra" because the customer asserts that he wants that particular car but with the less expensive standard transmission.

The entry is:

Report discharged.

Remanded to the Superior Court for further proceedings.

Each side to bear its own costs.

All concurring.